IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CR-139 |
| | ) | |
| RUFUS SUTTON, | ) | (VARLAN/GUYTON) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Rufus Sutton's Motion to Suppress Statements [Doc. 24], filed on December 1, 2009. The Government responded [Doc. 29] in opposition to the motion on December 15, 2009. The Court held an evidentiary hearing on February 19, 2010. Assistant United States Attorney Alexandra Hui appeared on behalf of the Government. Attorney Roland E. Cowden represented the Defendant, who was also present. The Government presented the testimony of Knoxville Police Department (KPD) Officer Shawn Shreve and Investigator Glen Morrell. At the conclusion of the evidence, both parties requested the opportunity to file post-hearing briefs. The Government filed a supplementary brief [Doc. 40] on March 23, 2010. The Defendant did not provide a supplementary filing. Upon receipt of the Government's post-hearing brief, the Court took the motion, response, testimony, exhibits, and supplemental brief under advisement.

1

# I. POSITIONS OF THE PARTIES

On the evening of July 30, 2009, police were dispatched to the Defendant's home in Knox County, Tennessee, in response to a 911 call. An officer encountered the Defendant in the street outside his home. A search of the Defendant's person revealed a gun, which forms the basis of the Defendant's federal charges [Doc. 1] for being a felon in possession of a firearm (Count One) and possessing a firearm with an altered serial number (Count Two). On October 28, 2009, Special Agent Rebecca Bobich of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), arrested the Defendant on a federal arrest warrant. The Defendant calls for the suppression of his 911 call, his statements to the police on the evening of July 30, and his subsequent statements to Agent Bobich. He argues that these statements violate the Fifth Amendment because they were made without the benefit of the Miranda warnings or counsel and were involuntary. The Defendant also argues that Federal Rule of Evidence 403 requires the exclusion of these statements because the danger of unfair prejudice from the statements substantially outweighs their probative value.

The Government responds that the 911 call and the initial statements to KPD officers were not custodial and, thus, no Miranda warnings were required. It concedes that statements the Defendant made after being handcuffed and placed in the police car were custodial and unwarned and states that it will not seek to use these statements at trial. It argues that the Defendant's statements to Agent Bobich were either volunteered or made following his receipt of the Miranda warnings. Finally, the Government contends that Rule 403 is not a proper basis for suppressing evidence. Alternatively, it asserts that an evidentiary ruling on the admissibility of the statements can only be made in the context of the trial.

## II. SUMMARY OF EVIDENCE FROM SUPPRESSION HEARING

At the February 19 suppression hearing, the Government called KPD Officer Shawn Shreve, who testified that he entered the police academy in November 2007 and began work for KPD as a patrol officer in May 2008. Shortly after midnight on July 30, 2009, Officer Shreve received a call about a domestic disturbance at 1919 Bernhurst Drive.[1] The dispatch reflected that a female had called 911 reporting a male with a gun. Officer Shreve also received a computer screen reporting the call. He drove to 1919 Bernhurst Drive. As he neared that address, he saw a male in the street. Officer Shreve thought it was unusual for someone to be out in that neighborhood at that time of night and believed the man could be related to the call he had received.

Officer Shreve stated that when he got out of his police car, the man began walking toward him in a manner that Officer Shreve perceived to be aggressive. Officer Shreve told the man to stop and asked whether his name was Rufus. The man acknowledged that he was Rufus. Officer Shreve stated that he was concerned for his own safety, because the dispatch had stated that a gun was involved. Officer Shreve then asked the man if he had any knives or weapons on him. Officer Shreve also stated that as he approached the man to frisk him, the man put his hands down toward his sides as if he were reaching for a weapon. Officer Shreve ordered the man to turn around and put his hands up. The man turned away from him and said that he had a gun in his pocket. Officer Shreve frisked the man and found a pistol in his back pocket. He retreived the gun and put it on the hood of his police car. Officer Shreve identified the man as the Defendant.

---

[1]The Court notes that the transcript [Doc. 39] gives this street as Fernhurst Drive. The Government asserts and the Court's notes from the suppression hearing confirm that the street name is actually Bernhurst.

Officer Shreve said that he secured the Defendant and placed him in the back of his police car. He spoke with the Defendant, who remained handcuffed in the back of the police car. He did not give the Defendant the Miranda warnings before talking with him.

Officer Shreve identified a DVD [Exhibit 1] created from footage from his in-car camera. At 12:27:28 a.m.[2] on the recording, Officer Shreve asked the Defendant, "Is your name Rufus?" The Defendant replied, "Yeah." Officer Shreve explained that the radio dispatch stated that a black male named Rufus Sutton was at 1919 Bernhurst and that he could be the one with the gun. The female caller was identified as Ms. Cates. At 12:27:34 a.m., the Defendant walked toward Officer Shreve with his hands up. Officer Shreve asked the Defendant to turn around and to keep his hands up, but the Defendant reached toward his waist. Shreve asked the Defendant to turn around and to put his hands up again. At 12:27:40 a.m., Officer Shreve asked the Defendant if he had any knives or weapons on him. The Defendant said, "Yes." At 12:27:55 a.m., Officer Shreve retrieved a handgun from the Defendant's person. At 12:28:15 a.m., Officer Shreve handcuffed the Defendant. At 12:28:38 a.m., other officers arrived and went inside the residence to talk to the female. At 12:28:50 a.m., Officer Shreve and the Defendant walked out of view as Officer Shreve placed the Defendant in the patrol car.

Officer Shreve testified that 911 is a call center that people may call to request police, ambulance, or fire services if they have an emergency. The 911 call center is independent of the KPD. Once someone calls 911, a 911 dispatcher will relay the call to the police. Officer Shreve stated that it was not 911's duty to determine who is a suspect and who is a victim with respect to

---

[2]Exhibit 1 reflects that the officer drove up and parked at 00:27:28. This time stamp reflects that it was approximately one-half hour after midnight, rather than after noon.

4

a call.

On cross-examination, Officer Shreve testified that he took the Defendant into custody because he found a firearm on him. He agreed that the Defendant was talking on a cellular telephone when he arrived but stated that he did not know that the Defendant was talking to 911. Because his headlights and his spotlight were turned on the Defendant, he was not sure that the Defendant knew he was a police officer at first. As the Defendant approached him, the Defendant said that he was on probation and that he did not want to get into trouble. The Defendant said that he had a gun and told where it was located before Officer Shreve found it. Sometime later, the Defendant told Officer Shreve that he had taken the gun from Ms. Cates.

On redirect examination, Officer Shreve stated that he arrived on the scene within minutes of receiving the radio dispatch. At the time, he was only aware of the 911 call from the female caller and did not know of a second 911 call. Officer Shreve charged the Defendant with unlawful possession of a handgun and defacing a serial number. On recross-examination, Officer Shreve stated that these state charges were later dismissed.

Investigator Glen Morrell testified that he had served as a KPD investigator for ten years before also becoming a task force officer with ATF two years ago. In his twelve years of experience, he had arrested hundreds of persons. He and Special ATF Agent Rebecca Bobich served a federal arrest warrant on the Defendant at the Knoxville Detention Facility. The Defendant was waiting in the processing area, and Agent Bobich handcuffed him, filled out his paperwork, and advised him of the charges. She also told the Defendant he was under arrest. She did not ask him any questions at that time. Investigator Morrell testified that as they were walking out of the detention facility, the Defendant said, "I'm the one getting in all of the trouble. That's not even my

gun. It should all be on the 911 tapes." Once they placed the Defendant in Investigator Morrell's car, Agent Bobich advised the Defendant of the Miranda warnings. Neither Investigator Morrell nor Agent Bobich asked the Defendant any questions, either before or after he was given the Miranda warnings. The Defendant made no other statements in the police cruiser. Investigator Morrell testified that Agent Bobich's Report of Investigation [Exhibit 2] described the events surrounding the Defendant's arrest. This document reflects that the arrest occurred on October 28, 2009.

On cross-examination, Investigator Morrell testified that he is paid by the KPD. He confirmed that the Defendant did not receive the Miranda warnings before making his statement and that this statement was the only one the Defendant made at the time of his arrest.

## III. FINDINGS OF FACT

Based upon the testimony and the exhibits, including the Court's own review of Exhibit 1, the Court makes the following factual findings: On July 30, 2009, a female called 911 and reported a domestic disturbance involving a black male named Rufus Sutton, who had a gun. The 911 call center relayed this call to the KPD. Shortly before 12:30 a.m., Officer Shawn Shreve received a radio dispatch and a computer call screen regarding a domestic disturbance at 1919 Bernhurst Drive. The dispatch stated that a female had reported a black male with a gun. It also related that the male was named Rufus Sutton. Officer Shreve arrived at that address within minutes of the dispatch and saw a man, whom he later identified as the Defendant, in the street. When Officer Shreve got out of his patrol car, the Defendant, who was talking on a cellular telephone and walking toward Officer Shreve, raised his his hands. Officer Shreve ordered the Defendant to stop and asked if he was Rufus. The Defendant said, "Yeah." Officer Shreve told the Defendant to "stay

6

right there" and to turn around. The Defendant lowered his hands toward his waist. Officer Shreve ordered the Defendant to turn around and put his hands up again. The Defendant complied. Officer Shreve asked if the Defendant had any knives or weapons, to which the Defendant said, "Yes" and explained that he had a gun in his back pocket. The officer frisked the Defendant and found the gun in his back pocket. At some point during this exchange, the Defendant told Officer Shreve that he was on probation and that he did not want to get into trouble. Officer Shreve handcuffed the Defendant and placed him in the patrol car, explaining that he was just investigating. Without advising the Defendant of the Miranda warnings, Officer Shreve began to question him.

On October 28, 2009, KPD Investigator Glen Morrell and Special ATF Agent Rebecca Bobich arrested the Defendant at the jail. Agent Bobich handcuffed the Defendant and advised him of the federal charges. As they escorted the Defendant out of the facility, the Defendant said, "I'm the one getting in all of the trouble. That's not even my gun. It should all be on the 911 tapes." They placed the Defendant in Investigator Morrell's car, and Agent Bobich advised him of the Miranda warnings. They did not question the Defendant, and he made no other statements.

## IV. ANALYSIS

The Defendant argues that his statements were not knowingly and voluntarily made because he did not receive the Miranda warnings and due to the duress and coercion of the surrounding events. The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself." In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436,478-

79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998). "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." Stansbury v. California, 511 U.S. 318, 322 (1994); Salvo, 133 F.3d at 948.

Additionally, even when the Miranda warnings are administered, the government must prove that the defendant voluntarily, knowingly, and intelligently waived those Miranda rights before it may introduce an incriminating statement by a defendant. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). The government bears the burden of proving the voluntariness of the waiver by the preponderance of the evidence. Id. at 168. To determine whether a confession was voluntary, the court must examine the following factors in light of the totality of the circumstances: (1) whether the police conduct was objectively coercive, (2) whether the coercive police conduct was sufficient to overbear the defendant's will when viewed subjectively from the defendant's state of mind, and (3) whether the coercive police conduct was in fact the cause of the defendant's will being overborne. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Connelly, 479 U.S. at 167. "If the police misconduct at issue was not the 'crucial motivating factor' behind petitioner's decision to confess, the confession may not be suppressed." McCall, 863 F.2d at 459 (citing Connelly, 479 U.S. at 163-64).

The Defendant contests three separate "statements," (1) his call to 911 on July 30, 2009; (2) his statements to Officer Shreve on July 30, 2009; and (3) his statement to Agent Bobich and Investigator Morrell on October 28, 2009. With regard to each of these statements, the Court will determine whether the Defendant was in custody and subject to interrogation such that the

8

Miranda warnings were necessary. Second, the Court will examine the voluntariness of the statements. Finally, the Court will address the Defendant's argument that the statements are unfairly prejudicial and should be excluded from evidence under Rule 403 of the Federal Rules of Evidence.

### A. Miranda Warnings

As stated above, law enforcement officers must advise a person of the Miranda warnings when the person is questioned while in police custody. Miranda, 384 U.S. at 478-79; see also Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam) (holding that the obligation to administer Miranda warnings only arises if there has been "such a restriction on a person's freedom as to render him 'in custody'"). To determine whether an individual is in custody for purposes of receiving the Miranda warnings, the Court examines the totality of the circumstances to assess how a reasonable person in that situation would have interpreted the situation. Stansbury v. California, 511 U.S. 318, 323 (1994) (holding that the court looks to "the objective circumstances of the interrogation, not on the subjective views" of the questioning officers or the defendant); Salvo, 133 F.3d at 948. In other words, would a reasonable individual in the same position as the defendant have felt free to leave. United States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003).

The Court of Appeals for the Sixth Circuit has set forth several factors useful in determining whether an individual is in custody:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced

to their requests to answer some questions.

Salvo, 133 F.3d at 950; see also Swanson, 341 F.3d at 529. Ultimately, the Court must decide "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted); Swanson, 341 F.3d at 529.

*(1) Defendant's 911 Call*

The question of whether the Defendant was in custody at the time of his alleged 911 call is easily answered. First, the Court has little to no evidence in the record that the Defendant called 911 on July 30, 2009. The only evidence on the matter was Officer Shreve's statement on cross-examination, confirmed by the video recording, that the Defendant was talking on a cellular telephone when the officer arrived on the scene. Officer Shreve stated that he did not know to whom the Defendant was talking. The content of this call was not introduced at the suppression hearing. Assuming that the Defendant was talking to 911, he was clearly not in police custody because he initiated the call before the police arrived on the scene. See generally, Mason v. Mitchell, 320 F.3d 604, 631 (6th Cir. 2003) (reasoning that a defendant who voluntarily came to the police station for questioning was not in custody). The 911 operator who fielded the Defendant's call was not a law enforcement officer and, as argued by the Government, could not have placed the Defendant in custody over the telephone. Accordingly, the Miranda warnings were not required for the 911 call.

*(2) Statements of July 30, 2009*

The Defendant's July 30, 2009 statements to Officer Shreve fall into two categories: The statements the Defendant made to Officer Shreve before the gun was found and the statements he made inside Officer Shreve's police car. The latter are undoubtedly custodial as the Defendant was handcuffed and secured in the back of Officer Shreve's police car. The Government concedes as much and has agreed not to use the Defendant's statements to Officer Shreve following the Defendant's being placed in the police car. Thus, the Court turns to the question of whether the Defendant was in custody during the time period from when Officer Shreve asked him if his name was Rufus to the point at which Officer Shreve found the gun on his person.

With regard to the Defendant's July 30 statements to Officer Shreve, an examination of the circumstances in light of the above quoted factors reveals that the Defendant was not in custody before Officer Shreve found a gun on his person. With regard to the purpose of the questioning, Officer Shreve asked the Defendant if he were Rufus in order to determine whether the Defendant was related to the dispatch. Officer Shreve also asked whether the Defendant had a weapon for the officer's own safety in light of his knowledge of a gun from the dispatch. The place of the questioning, the street near the Defendant's house, was not coercive or hostile. The Defendant was questioned by a single officer, and the questioning was very brief, lasting just over a minute based upon the video recording. Importantly, the Court observes that the Defendant initiated the encounter with Officer Shreve, approaching him as he got out of the patrol car. Finally, the Court would note that the Defendant did not have unrestrained freedom of movement during this one minute interval, as Officer Shreve had told him to turn around and keep his hands up and the Defendant was submitting to a frisk.

11

Based upon the totality of the circumstances, the Court finds that the Defendant was not in custody during the some seventy seconds that Officer Shreve questioned him before placing him in the patrol car. Notably, the Defendant did not have unrestrained freedom to move about and was arguably the subject of an investigatory detention or Terry stop under the Fourth Amendment. Nevertheless, an investigatory detention under the Fourth Amendment does not necessarily equate to custody under the Fifth Amendment. United States v. Knox, 839 F.2d 285 (6th Cir. 1988) (Jones, J., concurring). While acknowledging that a traffic stop curtails the driver's and the passengers' freedom of movement, the Supreme Court has held that an individual briefly detained for a routine traffic stop "is not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 437, 440 (1984). In so holding, the Court likened a traffic stop to a "Terry stop" and observed that "[t]he comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda." Id. at 440; see also Knox, 839 F.2d at 292 & 296 (Jones, J., concurring) (rejecting the proposition that an investigatory detention can never evolve into custodial interrogation). Consideration of all the circumstances surrounding the instant Defendant's brief detention persuade the Court that he was not in custody and the Miranda warnings were not required.

Moreover, even if the Defendant were in custody during the relevant one-minute interval, the Court finds that the public safety exception relieved Officer Shreve of the obligation to give the Miranda warnings at that time. In New York v. Quarles, the Supreme Court recognized a narrow public safety exception to the requirements of Miranda, permitting an officer to question an unwarned suspect in custody when such questions are "prompted by a concern for the public safety." 467 U.S. 649, 655 (1984). "It is well settled that warrantless interrogation is permitted

when officers have a reasonable belief based on articulable facts that they are in danger." United States v. Talley, 275 F.3d 560, 563 (6th Cir. 2001). "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007).

In the present case, Officer Shreve had received a radio dispatch that a male named Rufus Sutton had a gun. As the Defendant approached him, he confirmed that the Defendant was Rufus, which gave him reason to believe that the Defendant might have or have recently had a weapon. Despite his request that the Defendant keep his hands up, the Defendant reached toward his waist, which caused Officer Shreve to believe he could be reaching for a weapon. Thus, Officer Shreve had a reasonable belief that the Defendant could gain access to a weapon and inflict harm with it. Accordingly, the Court finds that the public safety exception would apply in this case.

*(3) Statement of October 28, 2009*

Finally, the Court examines whether the Defendant was subject to custodial interrogation at the time that he made the statement "I'm the one getting in all of the trouble. That's not even my gun. It should all be on the 911 tapes[,]" to Agent Bobich and Investigator Morrell. The Court finds that the Defendant was clearly in custody at this juncture as Agent Bobich had just arrested him pursuant to a federal warrant, had handcuffed him, and was escorting him out of the building. This was not just the equivalent of a formal arrest, it was a formal arrest. The crux of the inquiry with regard to the October 28 statement is whether it was given in response to interrogation or was volunteered.

The duty to warn under Miranda arises in custodial situations "whenever there is 'express questioning or its functional equivalent.' " United States v. Murphy, 107 F.3d 1199, 1204 (6th Cir.1997) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)). "Interrogation" under Miranda thus "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. "[W]here a defendant [in custody] makes a voluntary statement without being questioned or pressured by an interrogator," however, "the statements are admissible despite the absence of Miranda warnings." Murphy, 107 F.3d at 1204 (citing United States v. Montano, 613 F.2d 147, 149 (6th Cir.1980)). In the present case, the only evidence before the Court is Investigator Morrell's testimony, as confirmed by Exhibit 2, that neither he nor Agent Bobich asked the Defendant any questions. Moreover, the Court finds that none of the police actions to which he testified compelled any sort of response from the Defendant. Accordingly, the Defendant's October 28 statement was volunteered. The officers were not required to provide the Miranda warnings before it was given.

In examining the Defendant's alleged 911 call, the Defendant's July 30 statements to Officer Shreve before the gun was found, and the Defendant's October 28 statement, the Court finds that the Miranda warnings were not given, and that they were not required to be given, because the Defendant was not in custody or because he was not subject to interrogation (or both). With regard to the Defendant's July 30 statements to Officer Shreve after he was placed in the police car, the Court finds that the Miranda warnings should have been given. Thus, the statements made by the Defendant on July 30, 2009, once he was handcuffed and placed in the patrol car should be suppressed.

### B. Voluntariness

In addition to objecting to the unwarned nature of his statements, the Defendant argues that his statements should be suppressed because they were not knowingly and voluntary made. In this regard, he argues that the statements that he gave on July 30, 2009, were involuntary because of his "psychological history, his education and emotional maturity, and the fact that the safety of his children, his significant other, and himself had been placed in mortal jeopardy[.]" [Doc. 24-1, p.3] The Government argues that the Court does not need to reach the question of voluntariness of the Defendant's statements because it has established that the Miranda warnings did not need to be given before any of the remaining statements.

The concern over a coerced confession stems from both the Fifth Amendment's protection against forced self incrimination and also the Due Process clause. Dickerson v. United States, 530 U.S. 428, 432-34 (2000) (observing that the Court has "never abandoned this due process jurisprudence, and thus continue to exclude confessions that were obtained involuntarily"). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry. But . . . '[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was "compelled" despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.'" Id. at 444 (quoting Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984)). As discussed above, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary[.]'" Connelly, 479 U.S. at 167. Moreover, the coercive police activity must be the primary motivation for the Defendant's decision to give the statement before suppression of the statement is warranted. McCall, 863 F.2d at 459 (citing Connelly, 479 U.S. at 163-64). In the present case, the Defendant fails even to allege any coercive police activity.

15

Instead, the Defendant's focus is on his own psychological and emotional condition.

"Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." United States v. Newman, 889 F.2d 88, 94 (6th Cir. 1989). Here, with regard to the Defendant's alleged 911 call, the police were not involved. The Court finds no evidence of coercion on the part of Officer Shreve with respect to the statements made prior to the Defendant's arrest or on the part of Agent Bobich and Investigator Morrell on October 28, 2009. Accordingly, the Court finds that the Defendant's statements to Officer Shreve in response to his questions before the gun was found and his statement to Agent Bobich and Investigator Morrell following his arrest on October 28, 2009, were voluntarily made.

**C. Rule 403**

Finally, the Defendant argues that his "personal circumstances and the totality of the circumstances at the time of his arrest . . . are such that allowing the use of those statements allegedly made by Mr. Sutton would violate the unfair prejudice prong of Rule 403" of the Federal Rules of Evidence. [Doc. 24-1, p.3] At the February 19 hearing, defense counsel explained that at trial, the Defendant will present the defense that he possessed the firearm in question temporarily due to the emergent nature of the situation. He asserted that Ms. Cates, the female in the house, was bearing the firearm and that the Defendant took it away from her to protect her from self harm, to protect the children present, and to protect himself. The Defendant argues that in light of this defense, the presence of police at the scene and the drama inherent in the 911 call are unfairly

16

prejudicial such that his statements should be suppressed.

Rule 403 of the Federal Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" The Court agrees with the Government that Rule 403 is not a basis for the suppression of illegally obtained evidence. Instead, the rule addresses the degree to which otherwise relevant and admissible evidence is unfairly prejudicial. Unfair prejudice arises not because the evidence casts the defendant in a bad light but, instead, because the evidence "tends to suggest a decision on an improper basis." United States v. Johnson, 581 F.3d 320, 327 (6th Cir. 2009). In this regard, the Court finds that the weighing of evidence required under Rule 403 must necessarily be left for the District Court to be conducted within the context of the trial. Moreover, the Court notes that it has heard no evidence concerning the content of the Defendant's 911 call or any details relating to the circumstances of the alleged domestic dispute other than what was provided in Officer Shreve's testimony regarding his radio dispatch. Thus, the Defendant's objection to his statements based upon Rule 403 must be denied at this time.

## V. CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to suppress the Defendant's call to 911, his statements on July 30, 2009, before he was handcuffed and placed in the police car, or his statement on October 28, 2009. The Court recommends that the Defendant's statements to Officer Shreve after the Defendant was secured in the police car be suppressed. For the reasons set forth herein, it is **RECOMMENDED** that the Motion to Suppress Statements [**Doc. 24**] be **GRANTED in part** with respect to the statements on July 30, 2009, following the Defendant's placement in the police car and **DENIED in all other respects**.[3]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).