UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:09-CR-139 (VARLAN/GUYTON) |
| RUFUS SUTTON, | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Rufus Sutton is charged in the indictment in this case [Doc. 1] with being a felon in possession of a firearm, and with having removed, altered, and obliterated the manufacturer's serial number from a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (k). Defendant filed a Motion to Suppress Statements [Doc. 24] on December 1, 2009. The government filed a response in opposition to this motion on December 15, 2009 [Doc. 29]. The magistrate judge held an evidentiary hearing on February 19, 2010 [*see* Doc. 37]. At the conclusion of the evidence, both parties requested the opportunity to file post-hearing briefs. The government filed a post-hearing brief [*see* Doc. 40]; defendant did not.

On April 22, 2010, the magistrate judge filed a Report and Recommendation (the "R&R") recommending that the motion to suppress be granted with respect to the statements defendant made on July 30, 2009 following defendant's being placed in the police car, and

that it be denied in all other respects [Doc. 41].[1] Defendant filed objections to the R&R on May 7, 2010 [Doc. 45]. The government filed a response in opposition to those objections on May 10, 2010 [Doc. 47]. This matter is before the Court on defendant's objections. The Court undertakes a de novo review of those portions of the record to which defendant objects. Fed. R. Crim. P. 59(b)(3).

The Court has carefully considered the motion to suppress, the response, the supplement, the R&R, the objections, and the response to those objections. For the reasons that follow, the Court will overrule defendant's objections, accept in whole the R&R, and deny the motion to suppress.

The Court first sets forth the findings of fact made by the magistrate judge in his R&R.

I. **Findings of Fact**[2]

Around midnight on July 30, 2009, a female called 911 and reported a domestic disturbance involving a black male named Rufus Sutton, who had a gun. The 911 call center relayed this call to the Knoxville Police Department (the "KPD"). Shortly before 12:30 a.m. on July 30, KPD Officer Shawn Shreve received a radio dispatch, which was reflected on his computer call screen, regarding a domestic disturbance at 1919 Bernhurst Drive. The

---

[1] The Court notes that the government concedes that the statements defendant made after being placed in the police car were custodial and unwarned, and represents that it will not seek to use those statements at trial [*see* Doc. 29].

[2] The magistrate judge based his findings of fact on testimony and exhibits offered at the suppression hearing [*see* Doc. 41].

dispatch stated that a female had called 911 to report that a black male named Rufus Sutton had a gun at that address.

Officer Shreve arrived at 1919 Bernhurst Drive within minutes of that dispatch and encountered a man, whom he later identified as defendant, standing in the street. When Officer Shreve stepped out of his patrol car, defendant, who was talking on a cellular telephone and walking toward Officer Shreve, raised his hands. Officer Shreve ordered defendant to stop, and asked defendant if his name was Rufus. Defendant replied that it was.

Officer Shreve then told defendant to "Stay right there," and to turn around. Defendant responded by lowering his hands toward his waist. Officer Shreve ordered defendant to turn around and put his hands up again. This time, defendant complied. Officer Shreve asked defendant if he had any weapons; defendant replied that he did, explaining that he had a gun in his back pocket. Officer Shreve frisked defendant and found a gun in his back pocket. At some point during this encounter, defendant told Officer Shreve that he was on probation, and did not want to get into any trouble. Officer Shreve handcuffed defendant and placed him in the patrol car, explaining that he was "just investigating."

On October 28, 2009, KPD Investigator Glen Morrell and Special Agent Rebecca Bobich of the federal Bureau of Alcohol, Tobacco, and Firearms arrested defendant at the jail where he was being held on state charges in connection with the July 30, 2009 incident.[3] Agent Bobich handcuffed defendant and advised him that federal charges were being brought

---

[3] The state charges have since been dismissed.

against him. As Investigator Morrell and Agent Bobich escorted defendant out of the facility, defendant said, "I'm the one getting in all of the trouble. That's not even my gun. It should all be on the 911 tapes." Defendant was then placed in Investigator Morrell's car, at which point Agent Bobich gave defendant *Miranda* warnings. The agents did not question defendant, and he made no other statements.

## II. Analysis

Defendant first argues that the statements he made in his 911 call should be suppressed because the 911 operator had a duty to inform him of his *Miranda* rights, and because his "psychological history" rendered these statements involuntary [Doc. 45]. He argues next that the statements he made on July 30, 2009 prior to being handcuffed should be suppressed because he was "in custody" for *Miranda* purposes as soon as Officer Shreve arrived on the scene, and because the public safety exception is not applicable [*Id.*]. He argues finally that the statement he made on October 28, 2009 should be suppressed because the statement was not made voluntarily [*Id.*].

The Court considers each of these arguments below.

### A. Statements Made During 911 Call

Defendant first argues that the statements he made in his 911 call should be suppressed. He advances two theories in support of this argument: First, that the 911 operator had a duty to inform him of his *Miranda* rights; and second, that his "psychological history" rendered these statements involuntary [Doc. 45].

As the magistrate judge correctly found when he considered these arguments below, neither has any merit. With respect to defendant's first theory, defendant offers no case law to support the argument that a 911 operator is considered "quasi-government personnel" for *Miranda* purposes, as defendant contends, and thus has a duty to inform callers of their *Miranda* rights. Moreover, even were 911 operators considered "quasi-government personnel" for this purpose, "[t]he application of the *Miranda* rule is limited to 'custodial interrogations,' *i.e.*, 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way.'" *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (quoting *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998)). The claim that a voluntarily-placed 911 call constitutes a custodial interrogation for *Miranda* purposes, as defendant suggests, is unconvincing.

Defendant's second argument is equally unconvincing. Defendant argues that:

> [His] psychological history–having been abandoned by his mother when he was twelve to survive on the streets on his own and the resulting post-traumatic stress disorder–his education and emotional maturity, and the fact that the safety of his children, his significant other, and himself had been placed in mortal jeopardy would have all prevented any statements made in the temporally proximate aftermath of that imperilling from being voluntary, knowing, [and made] with full awareness . . . .

[Doc. 45]. As the magistrate judge correctly held, and as the Sixth Circuit "has explained, 'Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary.'" *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir.

5

2005) (quoting *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989)).  The magistrate judge pointed out that, "with regard to the defendant's alleged 911 call, the police were not involved" [Doc. 41].  The Court thus overrules defendant's objections regarding the statements made in his 911 call.

**B.     July 30, 2009 Statements Made Prior to Being Handcuffed**

Defendant next argues that the statements he made on July 30, 2009 prior to being handcuffed should be suppressed.  He advances two theories in support of this argument: First, that he was "in custody" for *Miranda* purposes as soon as Officer Shreve arrived on the scene; and second, that the public safety exception is not applicable [*Id.*].

The Court rejects these arguments as well.  Under defendant's first theory, defendant argues that he was "[h]igh-beam blinded, ordered to stop and put his arms up in the air, and already targeted (wrongly) by the 911 personnel and the officer as the perpetrator" [Doc. 45].  He argues further that he "was already effectively in custody the moment that the officer exited his vehicle" [*Id.*].

The Court disagrees with defendant.  The Sixth Circuit has set forth the following factors for courts to consider in determining whether an individual is "in custody" for *Miranda* purposes:

    (1)    the purpose of the questioning;

    (2)    whether the place of the questioning was hostile or coercive;

    (3)    the length of the questioning; and

6

(4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or . . . acquiesced to their requests to answer some questions.

*Salvo*, 133 F.3d at 950. In undertaking this factored analysis, the magistrate judge found that:

> With regard to the purpose of the questioning, Officer Shreve asked the defendant if he were Rufus in order to determine whether the defendant was related to the dispatch. Officer Shreve also asked whether the defendant had a weapon for the officer's own safety in light of his knowledge of a gun from the dispatch. The place of the questioning, the street near the defendant's house, was not coercive or hostile. The defendant was questioned by a single officer, and the questioning was very brief, lasting just over a minute based upon the video recording. Importantly, the Court observes that the defendant initiated the encounter with Officer Shreve, approaching him as he got out of the patrol car . . . Based upon the totality of the circumstances, the Court finds that the defendant was not in custody during the some seventy seconds that Officer Shreve questioned him before placing him in the patrol car.

[Doc. 41].

The Court agrees with the comprehensive analysis undertaken by the magistrate judge, and thus rejects defendant's first theory. Having found that the defendant was not subject to a custodial interrogation, the Court need not consider whether the public safety exception permits the introduction of statements that would otherwise be suppressed.

Even were the Court to consider the public safety question in this case, however, the Court would find the relevant exception applicable here. "It is well settled that warrantless interrogation is permitted when officers have a reasonable belief based on articulable facts that they are in danger." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). "For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to

7

believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007). As the magistrate judge correctly explained:

> In the present case, Officer Shreve had received a radio dispatch that a male named Rufus Sutton had a gun. As the defendant approached him, he confirmed that the defendant was Rufus, which gave him reason to believe that the defendant might have or have recently had a weapon. Despite his request that the defendant keep his hands up, the defendant reached toward his waist, which caused Officer Shreve to believe he could be reaching for a weapon. Thus, Officer Shreve had a reasonable belief that the defendant could gain access to a weapon and inflict harm with it.

[Doc. 41]. The Court thus rejects defendant's second objection as well.

### C. October 28, 2009 Statement

Finally, defendant argues that the statement he made on October 28, 2009 should be suppressed because the statement was not made voluntarily [*Id.*]. In support of this argument, defendant contends that he "was clearly in federal custody at the time of the statement" [Doc. 45]. He argues further that the "implicit interrogation or interrogation-like circumstances as they appeared to [defendant] arose out of the Kafkaesque situation in which he found himself"–specifically, that the state charges brought against him had been dropped, but that defendant then found "himself, instead of being released, being transported into the nightmare of federal criminal proceedings" [*Id.*]. He contends on this basis that "his statement was anything but voluntary, and again goes to the heart of voluntariness as set forth in *Miranda* and its progeny, and in fact reads more as an exclamatory statement, an

8

involuntary eruption of emotional upset, than any kind of knowing and voluntary communication" [*Id.*].

The Court disagrees. The Court notes first that the magistrate judge found that defendant was in custody at the time he made these statements, as he had just been arrested pursuant to a federal warrant [*see* Doc. 41]. But the magistrate judge also found that neither of the federal agents who arrested defendant asked any questions of defendant when they arrested him [*see* Doc. 41]. The magistrate judge also found that "none of the police actions to which [Investigator Morrell] testified compelled any sort of response from the defendant" [*see id.*]. Based upon its own review of the evidence, the Court agrees with the conclusions of the magistrate judge, and will overrule defendant's objection accordingly.

### III. Conclusion

For the reasons above, the Court **OVERRULES** defendant's Objections to Report and Recommendation [Doc. 45]. The Court **ACCEPTS IN WHOLE** the Report and Recommendation [Doc. 41]. Defendant's Motion to Suppress Statements [Doc. 24] is **GRANTED in part** with respect to the statements on July 30, 2009 following defendant's being placed in the police car, and **DENIED in all other respects**.

IT IS SO ORDERED *NUNC PRO TUNC* May 21, 2010.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE